IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CARLBERG DESIGN, INC. d/b/a RUGBY AMERICA LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  05-3151 |
| PRL USA HOLDING, INC., | ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant PRL USA Holdings, Inc.'s (PRL) Motion and Memorandum of Law in Support of PRL USA Holdings, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (d/e 7), and Plaintiff Carlberg Design, Inc. d/b/a Rugby America Ltd.'s (Carlberg) Motion to Enjoin Prosecution of the Second-Filed New York Action (d/e 9).  On June 15, 2005, Carlberg filed this action in this Court against PRL.  Carlberg filed an Amended Complaint on June 20, 2005.  Count I of the Amended Complaint seeks a declaratory judgment that Carlberg's marketing of various items of clothing

1

on which it places the word "Rugby" does not infringe upon PRL's registered trademark of the word "Rugby," and further does not dilute PRL's registered trademark of that word. Count II asks this Court to cancel PRL's registered trademark of the word "Rugby." On June 24, 2005, PRL filed an action in the United States District Court for the Southern District of New York against Carlberg for trademark infringement, trademark dilution, and unfair competition under the federal and New York state statutes. PRL USA Holdings, Inc. v. Carlberg Design, Inc., S.D.N.Y. Case No. 05-cv-5888 (N.Y. Case).

Count I of the Amended Complaint in this action and the federal action claims in the N.Y. Case address essentially the same issues. PRL wants the dispute to be resolved in the N.Y. Case. Carlberg wants the dispute to be resolved in this Court. PRL is the party seeking a remedy for Carlberg's alleged wrongful conduct; Carlberg is seeking a declaration of non-liability. Since PRL filed the infringement action promptly after the declaratory judgment action was filed, this matter should proceed with PRL as the plaintiff. Tempco Elec. Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746 (7th Cir. 1987). Therefore, PRL's Motion to Dismiss is allowed, and Carlberg's Motion for an Injunction is denied.

STATEMENT OF FACTS

Beginning in 1981, Carlberg produced and marketed shirts and other items on which it placed the word "Rugby." Some of the shirts were intended to be worn while playing the sport of rugby, while others were not. Beginning in 1992, PRL began filing a series of trademark applications with the United States Patent and Trademark Office (U.S.P.T.O.) for trademarks of the terms "Rugby," "Rugby North America," "Polo Ralph Lauren Rugby," and "Rugby 67" on apparel not specifically adapted to be worn while playing the sport of rugby.

In June 2003, Carlberg filed applications with the U.S.P.T.O. to register trademarks for the term "Rugby Girl," and the term "Rugby since 1823" on clothing and promotional items. On November 26, 2003, counsel for PRL sent a letter to James Carlberg, the president of Carlberg. The letter informed Carlberg that PRL "licenses the well known RUGBY and RUGBY NORTH AMERICA Trademarks for use in connection with the design, manufacture and sale of a wide range of clothing . . . ." <u>Declaration of Roxanne Elings in Support of PRL USA Holdings, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)(d/e 8)</u>, Exhibit D. The letter further stated:

3

> As I'm sure you can appreciate, our client vigorously pursues third parties which it believes are infringing the RUGBY Trademarks in violation of federal and state trademark, unfair competition and dilution laws. Accordingly, we are writing to request information about your use of the RUGBY GIRL mark and any other mark incorporating the RUGBY element.

Id.

James Carlberg, president of Carlberg, responded with a letter dated December 3, 2003. The letter stated in part:

> I appreciate that Polo enjoys the sport of rugby enough to promote our sport through apparel. It is a small sport but we are out here. I have been screen printing rugby apparel since 1981. I'm sure way before Polo ever started. Plus I know there are over 133 trademark applications incorporating the word RUGBY and tens of thousands of screen printed designs all over the US which incorporate the word RUGBY. If Polo would be interested in allowing my company to do some of their "contract screen printing", we could talk about this. Our sport started in 1823. You want to talk about a lot of rugby apparel. The age of this sport makes American Football look like it was started last week.

Id., Exhibit E.

James Carlberg then wrote a second letter to PRL's counsel on January 12, 2004. James Carlberg explained in the letter how he started printing rugby apparel in 1981 and has been doing so ever since. He again offered to print items for PRL. He stated in part:

> We are fully automatic and can handle complex design jobs and

4

> very large runs. But what I see kids wearing today is some pretty simple stuff. Please relay this information on to your customer and contact me with any other questions. There are some really big rugby companies that have been printing the word Rugby since the early 1800's. Way before Polo came around. The issue of the word Rugby has never been a problem.

Id.

PRL and Carlberg had no further contact until February 2005. On February 28, 2005, PRL's attorney sent James Carlberg another letter. The letter stated in part:

> [W]e believe that your use of the RUGBY marks constitutes trademark infringement, false designation of origin and unfair competition arising under the Trademark Act of 1946, . . . as amended by the Trademark Counterfeiting Act of 1984, . . . and applicable state laws.
>
>     PRL USA would like to resolve this in a mutually constructive and amicable manner without causing further irreparable harm to the goodwill and reputation of its RUGBY Trademarks. As such, we request that your client agree to withdraw its application to register RUGBY GIRL and RUGBY SINCE 1823 and agree not to use these marks or any other confusingly similar marks incorporating RUGBY in connection with apparel not specifically intended for use in Rugby.

Id., Exhibit G (citations omitted). The letter concluded, "We would appreciate your response no later than **March 7, 2005**. We look forward to resolving this matter amicably and expeditiously." Id. (emphasis in the original).

5

PRL's counsel sent another letter to Carlberg on April 15, 2005. The letter stated in part:

> We reiterate that your use of the RUGBY marks constitutes trademark infringement, dilution, false designation of origin and unfair competition arising under the Trademark Act of 1946, . . . as amended by the Trademark Counterfeiting Act of 1984, . . . and applicable state laws, and ask once again that you (1) immediately file with the United States Patent and Trademark Office Express Abandonments of your Application Nos. 78/256,800 and 78/317,456 with copies to the undersigned, and (2) permanently cease all use of the RUGBY marks or any other confusingly similar marks incorporating RUGBY in connection with apparel not specifically intended for use in Rugby.
>
> While PRL USA would prefer to resolve this matter short of litigation, the possibility of such a resolution depends entirely on your prompt and satisfactory response to this letter. Our deadline to oppose your RUGBY GIRL mark is April 29, 2005, and in absence of a response by **April 25, 2005**, our client will have no choice but to file an opposition against that mark, and consider all available legal remedies.
>
> The above does not constitute an offer of settlement and is sent without prejudice to any rights or claims of PRL USA, all of which expressly are reserved. We look forward to resolving this matter amicably and expeditiously.

<u>Id.</u>, Exhibit H (emphasis in the original).

James Carlberg responded by email on April 20, 2005. He stated:

> We have been screen printing all of the phrases listed in your letter since the very early 1980's. Earlier than PRL had... I'm sure. Plus we print rugby merchandise for Rugby manufacturers

6

> that started in years: 1904 & 1823. Way before PRL or Rugby America were formed and before any of us were even born. Those companies would "grandfather" out on any phrase associated with the sport. So this would probably end up being a stand off between our two companies. Leaving only hefty legal fees.

<u>Id.</u>, Exhibit I. James Carlberg then inquired whether PRL would be interested in buying Carlberg. PRL's attorney responded by email on April 26, 2005. PRL's attorney stated:

> Although you claim to have been using the RUGBY marks since the 1980s, we believe your use was limited in distribution and was narrowly tailored to certain goods. Our famous RUGBY trademarks are used on goods not specifically suited for the sport of rugby. Similarly, the RUGBY GIRL trademark and others appear to be used on general apparel and accessories not specifically suited for the sport of rugby. As such, any use by our client of the RUGBY trademarks on the goods recited in your trademark application predates your use.
>
> While we appreciate the opportunity to buy you out, our client is not interested in this offer. We do not intend to stop you from continuing the part of your business that involves clothing sold to rugby teams specifically for the sport of rugby. However, we still would like your written assurance by April 27, 2005 that you will be abandoning your application for RUGBY GIRL and that you will permanently cease all use of the RUGBY marks or any other confusingly similar marks incorporating RUGBY in connection with apparel not specifically intended for use in the sport of rugby.

<u>Id.</u>, Exhibit J. Carlberg did not respond. The parties' submissions indicate that there was no further correspondence between the parties.

PRL filed with the U.S.P.T.O. an Opposition to Carlberg's Rugby Girl trademark application on April 28, 2005. The matter is pending before the Trademark Trial and Appeal Board. Carlberg filed this action on June 15, 2005. PRL filed the N.Y. Case on June 24, 2005. PRL them moved to dismiss this action, and Carlberg responded by moving to enjoin the N.Y. Case.

## ANALYSIS

This Court has the discretion to hear a declaratory judgment action when the controversy has ripened to the point where one of the parties asserting injury could file action for damages or an injunction, but has not done so. The Court, however, also has the discretion to decline to hear a declaratory judgment action. Tempco, 819 F.2d at 747. In light of the Seventh Circuit's instructions in Tempco, the Court believes that it must decline to hear this action.

In Tempco, plaintiff Tempco Electric Corp. used the Greek letter Omega as a symbol in registered trademarks. Omega Engineering Inc. also used the Greek letter Omega in its registered trademarks on competing products. Omega Engineering Inc.'s counsel sent letters in April 1985 threatening legal action if Tempco did not stop using the Omega letter on

its products. In May 1985, Tempco filed a declaratory judgment in the United States District Court for the Northern District of Illinois alleging no liability; four days later Omega filed its infringement action in the United States District Court for the District of Connecticut. The District Court in the Northern District of Illinois declined to hear the declaratory judgment action. The Seventh Circuit affirmed. The Seventh Circuit stated: "Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." Id. at 749.

The Seventh Circuit explained that a declaratory judgment action gives a party, such as Carlberg, an opportunity to have the issue of liability resolved; Carlberg does not have to wait until PRL decides to file an infringement action and let the risk of contingent liability hang over it; it can file the declaratory judgment action and have the issue determined. Tempco, 819 F.2d at 749. If, however, the party who claims to have been injured, such as PRL, promptly brings an infringement action after the declaratory judgment action has been filed, then the issue of liability can be resolved in the infringement action and "a declaratory judgment would serve no useful purpose. . . ." Id.

9

That is the case here. PRL has at least one registered trademark and several applications for registered trademarks for the sale of clothing with the word "Rugby" on them. Carlberg produces clothing and promotional items with the word "Rugby." PRL's attorneys have repeatedly told Carlberg to stop selling these clothing items and have threatened litigation. Thus, the controversy exists. Carlberg filed the declaratory judgment action to bring this dispute to a head, and PRL promptly filed its infringement action. Under Seventh Circuit precedent, the dispute should properly be determined in the infringement action filed by PRL rather than the declaratory judgment action. Tempco, 819 F.2d at 749-50.

Carlberg argues that its choice of forum should control because it was the first to file. The Seventh Circuit does not apply the first-to-file rule rigidly. Tempco, 819 F.2d at 750. The Tempco court stated that since both cases are in federal court there are no concerns of comity or federalism that would weigh in favor or against one forum or another. Id. at 748. The Tempco court stated that, "[F]rom society's point of view it is essentially irrelevant which one of them bears the expense and inconvenience of litigating in a distant forum--someone must." Id. at 749.

Carlberg argues that the rule in Tempco is limited to situations in

which the party filing the declaratory judgment is guilty of racing the other party to the courthouse in an effort to forum shop. Carlberg argues that it is not guilty of such maneuvering because PRL did not give any deadline for filing its infringement action. Instead, it hung the threat of a lawsuit over Carlberg. Carlberg properly used the declaratory judgment action to force a resolution of the threat.

The Tempco case certainly mentions the problem of parties using declaratory judgment actions as procedural fencing to delay or forum shop. Tempco, 819 F.2d at 750. The Tempco court, however, emphasized that it intended to create a rule that would simplify the question of the appropriate forum in these types of cases and resolve the issue easily with the lowest cost to the parties. "In such circumstances, the value of a rule is plain. The decision of who must litigate in a distant forum should not have to be made from scratch each time." Id. The court further stated: "Hopefully, as an appellate court we will be able to speak with sufficient clarity, that we can speak less frequently. In the end, a clear rule should decrease litigation of this type at both the trial and appellate levels." Id. at 749, n.4. Given the Seventh Circuit's desire for a clear rule, at least in infringement cases, this Court does not believe that its application of that

11

rule in infringement cases should turn on the motives of the parties filing the actions. The rule announced by the Seventh Circuit instructs this Court that the case should proceed in the forum where the plaintiff is seeking a remedy as long as the infringement action is filed promptly after the declaratory judgment action. PRL filed its infringement action in the N.Y. Case promptly after the declaratory judgment action was filed. The matter should, thus, proceed in the N.Y. Case.

Carlberg argues that the Seventh Circuit's decision in Tempco created a "widely-criticized and narrow exception" to the general rule that the matter should proceed in the first-filed case. See Plaintiff's Combined Memorandum in Support of its Motion to Enjoin Prosecution of the Second Filed New York Action and in Response to Defendant's Motion to Dismiss (d/e 10) at 2, 8, 12. That may well be, but this Court is bound to follow the Seventh Circuit. The Seventh Circuit states that infringement situations, such as the instant dispute, should proceed in the infringement case rather than the declaratory judgment case as long as the infringement case is filed promptly after the declaratory judgment case is filed.

Carlberg also cites district court cases that reject the decision in Tempco. E.g., Roadmaster Corp. v. Nordictrack, Inc., 1993 WL 625537

(N.D. Ill. 1993).  Those cases, however, involve patent law which is governed by the Federal Circuit.  The Federal Circuit rejected the Seventh Circuit's decision in Tempco.  Genentech, Inc. v. Eli Lilly and Co.,998 F.2d 931, 937 (Fed. Cir. 1993).  The cases cited by Carlberg, therefore, are not persuasive in this case.

Carlberg also argues that venue is not proper in New York.  That issue should be raised in the N.Y. Case, not here.  This Court makes no comment on issues of venue in the N.Y. Case.

THEREFORE, Defendant PRL USA Holdings, Inc.'s Motion and Memorandum of Law in Support of PRL USA Holdings, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (d/e 7), is ALLOWED, and Plaintiff Carlberg Design, Inc. d/b/a Rugby America Ltd.'s Motion to Enjoin Prosecution of the Second-Filed New York Action (d/e 9) is DENIED.  This Court declines to exercise jurisdiction to hear this matter under the Declaratory Judgment Act.  This ruling is not a ruling on the merits.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.


ENTER:   September 13, 2005.

FOR THE COURT:

                                                s/ Jeanne E. Scott
                                                JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE